UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MIGUEL APONTE AND AMADO CORREA,
on behalf of themselves and those similarly
situated,

                                    Plaintiffs,                    10 Civ. 4825 (PKC)

              -against-
                                                                  MEMORANDUM
                                                                  AND ORDER

COMPREHENSIVE HEALTH
MANAGEMENT, INC., a Foreign Profit
Corporation,

                                    Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              Plaintiffs Miguel Aponte and Amado Correa, individually and on behalf of all

other persons similarly situated, assert that defendant Comprehensive Health Management, Inc.

violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and New York Labor

Law §§ 650 *et seq.* ("NYLL"), by failing to compensate its "Benefits Consultant" employees for

hours worked in excess of forty hours per week. Two motions are now before this Court. First,

the plaintiffs move for conditional certification of their FLSA claims as a collective action and

seek court-facilitated notice to similarly situated persons. Second, the plaintiffs move for class

certification of their NYLL claims under Rule 23, Fed. R. Civ. P. For the reasons set forth

below, the plaintiffs' motions are granted.

BACKGROUND

              Defendant Comprehensive Health Management, Inc., d/b/a WellCare

("WellCare") provides "managed care services exclusively to government-sponsored health care

programs, focused on Medicaid and Medicare, including prescription drug plans and health plans

for families, children and the aged, blind and disabled." (2009 WellCare Annual Report p. 3, attached at Pls.' Mot. for Class Certification Ex. B.) As of December 31, 2009, WellCare operated Medicaid health plans in Florida, New York, Illinois, Hawaii, Missouri, Ohio and Georgia and various Medicare plans in all fifty states. (Id.)

To market and promote its various health care services, WellCare employs "Benefits Consultants." (WellCare Benefits Consultant Job Description, attached at Pls.' Mot. for Class Certification Ex. L.) As of December 31, 2009, WellCare employed approximately 565 such associates. (2009 WellCare Annual Report p. 11, attached at Pls.' Mot. for Class Certification Ex. B.) The primary responsibility of a Benefits Consultant is to market and promote either Medicare or Medicaid plans, but generally not both, in a specific geographic market. (Id.; WellCare Benefits Consultant Job Description, attached at Pls.' Mot. for Class Certification Ex. L.) WellCare trains its Benefits Consultants to combine community-based techniques, such as participating in local events and organizing community health fairs, with traditional marketing methods, such as direct mail, mass media and cooperative advertising with participating medical groups. (Id. p. 11.) Marketing and promotion efforts – in both the Medicare and Medicaid arena – are heavily regulated by the states and, where applicable, the Center for Medicare and Medicaid Services. (Id.) Benefits Consultants are paid an annual base salary, plus commissions based largely on the number of people they enroll in defendant's health care plans. (Compl. ¶¶ 23-24.) Benefits Consultants are treated by WellCare as exempt from overtime payments.

Plaintiffs Miguel Aponte and Amado Correa were both employed by defendant as Benefits Consultants. Plaintiff Aponte was employed as a Benefits Consultant marketing Medicare products in the Bronx and Manhattan, New York from approximately May 2008 until

March 2009. (Aponte Decl. ¶¶ 4-5, 10, attached at Pls.' Mot. for Class Certification Ex. E.)

Similarly, plaintiff Correa was employed as a Benefits Consultant marketing Medicare products

in the Bronx, New York from approximately 2007 until 2009. (Correa Decl. ¶¶ 4-5, 10, attached

at Pls.' Mot. for Class Certification Ex. F.) On June 21, 2010, Plaintiffs Aponte and Correa filed

suit against defendant on behalf of themselves and all others similarly situated, alleging that

defendant failed to pay its Benefits Consultants overtime in violation of the FLSA and NYLL.

(Docket # 1; Compl. ¶ 28.) Plaintiffs contend that defendant's failure to pay overtime results

from its erroneous classification of its Benefits Consultants as exempt from overtime

requirements. (Compl. ¶ 33.)

Plaintiffs now move for conditional certification of their FLSA claims as a

collective action and for class certification of their NYLL claims under Rule 23, Fed. R. Civ. P.

Since the filing of the Complaint, forty-two individuals employed as Benefits Consultants by

defendant have opted in to the case (the "Opt-Ins") by filing a Notice of Consent to Join.

DISCUSSION

I.      Plaintiffs' Motion for Conditional
        Certification of their FLSA Collective Action is Granted

        A.      The Standard for Conditional Class Certification under the FLSA

                To promote the efficient adjudication of similar claims, the FLSA permits

employees to pursue their claims collectively:

> An action . . . may be maintained against any employer . . . by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated. No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b). District courts have discretion, to implement section 216(b) "'by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).[1] "In a collective action under FLSA – unlike in a class action under Rule 23, Fed. R. Civ. P. – only plaintiffs who affirmatively opt in to the case can benefit from the judgment or be bound by it." Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL), 2006 WL 2853971, *2 (S.D.N.Y. Oct. 5, 2006).

In determining whether to exercise its discretion to send notice to potential class members, courts in this Circuit conduct a two-phase inquiry. See Myers, 624 F.3d at 554-55 (reviewing the two-phase inquiry and deeming it "sensible" for use in evaluating certification under section 216(b) of the FLSA); see also Lynch v. United Servs. Auto. Ass'n, 491 F.Supp.2d 357, 367-68 (S.D.N.Y. 2007). At the first phase, the court makes a preliminary determination as to whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs. See Myers, 624 F.3d at 555; Damassia, 2006 WL 2853971 at *3. Plaintiffs' burden at this initial stage is "minimal," Damassia, 2006 WL 2853971 at *3, requiring only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). No showing of numerosity, typicality, commonality and representativeness is required. See Lynch, 491 F.Supp.2d at 369; Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The 'similarly situated' standard . . . is thus considerably more liberal than class certification under Rule 23."). Moreover, at the initial stage,

---

[1] Although orders facilitating notice are often referred to as orders "certifying" a collective action, the FLSA does not contain a certification requirement. See Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL), 2006 WL 2853971, *2 (S.D.N.Y. Oct. 5, 2006). "Certification" is simply "the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members." Myers, 624 F.3d at 555 n.10.

the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations. See Lynch, 491 F.Supp.2d at 368.

If the plaintiffs meet their burden, the court conditionally certifies the class and authorizes the plaintiffs to send notice to potential collective action members. See id. at 368. Court-authorized notice is preferred because "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed" and because such notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). After receiving the court-approved notice, potential members may elect to opt in by filing Consent Forms with the Court. See Lynch, 491 F.Supp.2d at 368.

After discovery, typically on the defendant's motion for decertification, courts engage in the second phase of analysis. See id.; Iglesias-Mendoza, 239 F.R.D. at 367. During the second stage, the court determines on a full record, and under a more stringent standard, whether the additional plaintiffs are, in fact, similarly situated. See Damassia, 2006 WL 2853971 at *3. If the court concludes that all plaintiffs are similarly situated, the collective action proceeds to trial; otherwise, the collective action is decertified and the claims of the opt-in plaintiffs are dismissed without prejudice. See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

B.    FLSA Overtime Requirements and the "Outside Salesman" Exemption

Although the merits of plaintiffs' claim need not be resolved at this preliminary stage, an understanding of the FLSA overtime requirements and exemptions is helpful in analyzing plaintiffs' motion for court-authorized notice. The main provision under which plaintiffs sue is 29 U.S.C. § 207, which requires employers to pay their employees at a rate of

5

"one and one-half times the regular rate at which [the employee] is employed" for each hour

worked in excess of forty hours in a single week. 29 U.S.C. § 207(a)(1). The requirement does

not apply, however, with respect to certain categories of employees, including those that are

"employed in . . . the capacity of outside salesman." 29 U.S.C. § 213(a)(1). The "outside

salesman" exemption is narrowly construed and the defendant bears the burden of proof. See In

re Novartis Wage & Hour Litig., 611 F.3d 141, 150 (2d Cir. 2010).

    Pursuant to federal regulations, an employer may only apply the "outside

salesman" exemption to employees: "(1) Whose primary duty is: (i) making sales within the

meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use

of facilities for which a consideration will be paid by the client or customer; and (2) [w]ho is

customarily and regularly engaged away from the employer's place or places of business in

performing such primary duty." 29 C.F.R. § 541.500. The regulations elaborate on the meaning

of sales: "[s]ales within the meaning of section 3(k) of the Act include the transfer of title to

tangible property, and in certain cases, of tangible and valuable evidences of intangible property.

Section 3(k) of the Act states that 'sale' or 'sell' includes any sale, exchange, contract to sell,

consignment for sale, shipment for sale, or other disposition." 29 C.F.R. § 541.501(b). The

regulations also describe the relationship between promotion work and exempt outside sales

work: "Promotional work that is actually performed incidental to and in conjunction with an

employee's own outside sales or solicitations is exempt work. On the other hand, promotional

work that is incidental to sales made, or to be made, by someone else is not exempt outside sales

work." 29 C.F.R. § 541.503(a).

C.    Plaintiffs have Satisfied the "Similarly Situated" Standard

Plaintiffs move for court-authorized notice to the following class of potential opt-in plaintiffs:

> All 'Benefits Consultants' who worked for Defendant nationwide within the last three years who were not compensated at time-and-one-half for all hours worked in excess of 40 hours in one or more workweeks.

(Compl. ¶ 33.)

As set forth above, plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (internal quotation marks omitted). In a FLSA exemption case, as is the case here, plaintiffs can satisfy their minimal burden "by making some showing that there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Id. at 555 (internal quotation marks omitted) (alteration in original); see Lynch, 491 F.Supp.2d at 370 ("Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying.'"). At this preliminary stage, the allegations in the Complaint, together with the plaintiffs' declarations, the Opt-Ins' declarations, and other evidence, suffice to establish that plaintiffs and potential opt-in plaintiffs are similarly situated.

Plaintiffs allege that they are similarly situated to each other and to potential opt-in plaintiffs because (1) they were "all 'Benefits Consultants' and performed the same or similar job duties as one another in that they provided promotional services for Defendants," (2) they were "subjected to the same pay provisions in that they were paid a salary, plus additional

compensation, but not compensated at time-and-one-half for all hours worked in excess of 40 hours in a workweek," and (3) they were, as Benefits Consultants, erroneously classified by defendant as exempt from overtime requirements. (Compl. ¶¶ 30-32.) The declarations of plaintiffs and seventeen opt-in plaintiffs support the allegations in the Complaint, as do the official job descriptions of the Benefits Consultant position obtained from defendant's website. Moreover, defendant's opposition to plaintiff's motion for conditional certification and its answers to plaintiffs' first set of interrogatories reveal that defendant, in fact, maintains a policy of classifying all Benefits Consultants as exempt for overtime requirements under the "outside sales employee" exemption. (Def.'s Opp'n to Pls.' Mot. for Conditional Certification of Collective Action pp. 20, 29-30; Def.'s Resp. to Pls.' First Set of Interrog. pp. 9, 17, attached at Pls.' Reply Mem. in Supp. of Mot. for Class Certification, Ex. Q.)

The plaintiffs' declarations and the declarations of the opt-in plaintiffs highlight the similarity and uniformity in the Benefits Consultant position across products and regions. Each declarant states that as a Benefits Consultant, he or she was primarily responsible for promoting WellCare plans and products, was required to market and promote the plans and products within strict guidelines, attended training sessions and meetings with other Benefits Consultants, received a base salary plus commissions, worked more than forty hours per week, and did not receive overtime pay. (Decls. of Pls. and Opt-ins, attached at Pls.' Mot. for Conditional Certification of Collective Action, Exs. C-U.)

The official job descriptions of the Benefits Consultant position, obtained from defendant's website, substantiate these similarities. The primary job responsibilities of a Benefits Consultant are largely uniform across geographic regions. For example, Wellcare's description of the essential functions and qualifications for a Medicare Benefits Consultant in

Manhattan is identical, with only negligible differences, to that of one in Syracuse, Tampa and St. Louis. (WellCare Benefits Consultant Job Description, attached at Pls.' Mot. for Class Certification Ex. L and at Pls.' Mot for Conditional Certification as Collective Action Ex. W.) Similarly, the job of a Medicaid Benefits Consultant in Poughkeepsie is described in precisely the same manner as one who works in Albany. (Id.) Moreover, the primary job responsibilities of a Benefits Consultant are also largely uniform across products. For example, the official job description of a Benefits Consultant responsible for promoting Medicare products provides, in part, that such employees "[p]rospect for and enroll eligibles in the Medicare Advantage. Meet the minimum enrollment goal of new members into the Medicare + Choice Plan. Present the Medicare Advantage using approved presentation materials at both in-home and seminar settings." (Id.) Similarly, the official job description of a Benefits Consultant responsible for promoting Medicaid plans provides, in part, that such employees are "responsible for marketing the Medicaid product to interested eligible candidates in the service area, according to the prescribed rules and regulations of the Medicaid Contract." (Id.)

In opposing court-authorized notice, the defendant argues that certification as a collective action is inappropriate for two reasons. First, the defendant contends that the Court will be required to conduct an individualized factual inquiry of the exempt nature of each Benefits Consultant's actual job duties. The defendant argues that differences in individual marketing techniques, differences in compensation and geographic distinctions, among other things, makes proceeding collectively inappropriate.

While some of the details of the Benefits Consultant position vary, plaintiffs have made a sufficient showing, at this preliminary stage, of the similar nature of the primary responsibilities of the Benefits Consultant position across products and territories. FLSA

collective actions are not restricted to employees who are "clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." <u>Damassia</u>, 2006 WL 2853971, at *6. It is insufficient to merely describe "all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs." <u>Chowdhury v. Duane Reade, Inc.</u>, 06 Civ. 2295 (GEL), 2007 WL 2873929, *5 (S.D.N.Y. Oct. 2, 2007). Moreover, many of the variations highlighted by defendant seemingly reflect necessary adaptations of the position to fit specific geographic and regulatory environments and individual strengths and weaknesses. For example, Robert Beck, WellCare's Vice President of Sales and Marketing Operations, states in his deposition that in order to most productively generate leads, Benefits Consultants utilize techniques that they are most comfortable with, including, but not limited to, public speaking and public presentation, creating relationships with specific individuals who generate referrals for them, or setting up a table, chair and WellCare banner and greeting people as they walk by. (Beck Dep. 31:13-32:7, attached at Def.'s Opp. to Pls.' Mot. for Conditional Certification of Collective Action, App. 3.)

       If, after discovery has taken place, it appears that the plaintiffs, including those who have opted in, have such different job duties that resolving the merits would require a mini-trial as to the nature and type of each Benefits Consultants' duties as well as the different ways in which each performs those duties, then the Court may conclude that the plaintiffs are not, in fact, similarly situated.

       Second, the defendant argues that different legal issues are likely to surface with respect to different members of plaintiffs' proposed class making proceeding collectively inappropriate. First, while confident that the Benefits Consultants fall under the outside salesman exemption, the defendant argues that, in the alternative, the Benefits Consultants may

also fall under the administrative employee exemption or the exemption for those who make over $100,000. See 29 U.S.C. § 213, 29 C.F.R. §§ 541.200, 541.601. At this preliminary stage, these potential alternative legal arguments do not negate plaintiffs' showing that they and the opt-in plaintiffs are similarly situated. Whether the defendant seeks to apply one blanket exemption policy to the Benefits Consultants as a group or another does not substantially change the inquiry at this stage because plaintiffs have made the requisite modest showing that they are similarly situated with respect to their primary job responsibilities. As such, the application of an overtime exemption would seemingly apply or not apply similarly to all. Second, defendant argues that the plaintiffs and potential opt-in plaintiffs are not similarly situated because some Benefits Consultants signed a separation agreement that potentially waives and releases a variety of employment-related claims. At this preliminary stage, this seemingly discrete issue does not impede a finding that plaintiffs' and potential opt-in plaintiffs are similarly situated.

D.    Plaintiffs are Entitled to Court-Authorized Notice

Plaintiffs seek to send a court-authorized notice to all Benefits Consultants nationwide who have worked for defendant from June 21, 2007 through the present. The plaintiffs attach a proposed notification letter (the "Notification") for approval. (Proposed Class Notice, attached at Pls.' Mot. for Conditional Certification as Collective Action, Ex. Y.)[2] Plaintiffs request that the Notification be sent by First Class mail and be posted at all defendant's offices where Benefits Consultants are present nationwide. (Pls.' Mot. for Conditional Certification as Collective Action, p. 19.) The defendant objects to the three-year notice period, the breadth of the group to be noticed and the request to post the Notification at all defendant's offices.

---

[2] Before the Notification is distributed, it should be updated to reflect the current number of opt-in plaintiffs who have already filed Consent to Join forms with the Court.

11

1.     The Notice Period

The defendant argues that if notice is authorized, it should only cover a two-year period, rather than the three years that plaintiffs request. (Def.'s Opp. to Pls.' Mot. for Conditional Certification as Collective Action, p. 30-31.) The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. See 29 U.S.C. § 255(a). The Second Circuit has explained that "a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act." Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988).

While the Court expresses no view regarding plaintiffs' argument that, on the merits, defendant willfully violated the FLSA, at this preliminary stage, plaintiffs' allegations of misclassification are sufficient to warrant authorizing notice for a three-year period. Courts that have faced this issue routinely approve a three-year notice period. See, e.g., Francis v. A & E Stores, Inc., 06 Civ. 1638 (CLB)(GAY), 2008 WL 2588851, *3 (S.D.N.Y. Jun. 26, 2008) ("At this preliminary stage . . . plaintiff's allegations of willful conduct . . . are sufficient to support defining the class based upon the three-year statute of limitations."); Fasanelli v. Heartland Brewery, Inc., 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007) (conditionally certifying class based on three-year period to "avoid any merit-based determinations at this time" but noting the possibility of "decertification at a later time"); Anglada v. Linens 'N Things, Inc., 06 Civ. 12901 (CM)(LMS), 2007 WL 1552511, *8 (S.D.N.Y. May 29, 2007) ("[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the

12

second phase of the collective action certification process."); Iglesias-Mendoza, 239 F.R.D. at 369 ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.").

### 2. The Group to be Noticed

The defendant also argues that the nationwide group to be noticed is overbroad and if notice is authorized, it should only be circulated to Benefits Consultants who, like the plaintiffs, worked in the New York City area. (Def.'s Opp. to Pls.' Mot. for Conditional Certification as Collective Action, p. 31.) As set forth above, at this preliminary stage, the plaintiffs have satisfied their minimal burden that they and Benefits Consultants who worked in all the defendant's offices nationwide are similarly situated. If, after discovery, it appears that Benefits Consultants in different geographic locations are not, in fact, similarly situated, the Court can consider a narrower class at that time.

### 3. The Dissemination of the Notice

Plaintiffs request that the Notification and Notice of Consent to Join be sent to potential opt-in plaintiffs via First Class mail and that they be posted at all defendant's offices where Benefits Consultants work. I find that First Class mail is a sufficient to provide potential class members with notice in this case. The notices need not additionally be posted in all the defendant's offices. Accordingly, defendant is ordered to produce the names, last known addresses, email addresses, and dates and location of employment of all Benefits Consultants who worked for defendant from June 21, 2007 to the present.

II. Plaintiffs' Motion for Rule 23(b)(3) Class
Certification of their NYLL Claims is Granted

Similar to the FLSA, New York Labor Law requires employers to pay employees one and one-half times the regular rate for time worked in excess of forty hours during any

13

workweek, unless they are exempt. See 12 N.Y.C.R.R. § 142-2.2. A similar exemption, as in

the FLSA, exists for outside salespersons and administrative employees. See 12 N.Y.C.R.R. §

142-2.14 (defining administrative employee exemption and outside salesperson exemption).

Employees paid less than the wage required by the law may "recover in a civil action the amount

of any such underpayments, together with costs all reasonable attorney's fees, . . . and unless the

employer proves a good faith basis to believe that its underpayment of wages was in compliance

with the law, an additional amount as liquidated damages . . . ." N.Y. LAB. L. § 663(1).[3] New

York law imposes a six-year statute of limitations on these types of actions. Id. § 663(3).

Plaintiffs seek class certification for violations of NYLL pursuant to Rule

23(b)(3), Fed. R. Civ. P.[4] Plaintiff defines the class as:

> All "Benefits Consultant" employees of the Defendant, employed
> in New York, during the six years immediately preceding the
> initiation of this action up to the date of this decision, who worked
> forty (40) or more hours in one or more weeks and who were not
> paid overtime premium wages, and/or spread-of-hours wages, as
> required by New York State Labor Law, including without
> limitation, § 190 et seq. and § 650 et seq. as well as wage orders
> promulgated thereunder.

(Pls.' Mot. for Class Certification p.2.)

A party seeking class certification under Rule 23 must satisfy the prerequisites of

Rule 23(a): numerosity, commonalty, typicality, and adequacy of representation. If Rule 23(a)

is satisfied, the court then considers the appropriateness of class certification as set forth in Rule

23(b). See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 290 (2d Cir. 1992). The

---

[3] New York law allows plaintiffs to waive their liquidated damages claim in overtime wage class actions "as long as
putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated
damages claims." Inglesias-Mendoza, 239 F.R.D. at 373-74 (internal quotation marks omitted). Plaintiffs'
expressed intention to waive their liquidated damages is therefore not a bar to class certification as long as notice is
provided to the Rule 23(b)(3) class instructing individuals how to opt out in order to preserve their claims for
liquidated damages.
[4] This Court may exercise supplemental jurisdiction over plaintiffs' state law claim under 28 U.S.C. § 1367(a) as the
state law claim and the FLSA claim derive from the same set of facts. See e.g., Torres v. Gristede's Operating
Corp., 04 Civ. 3316 (PAC), 2006 WL 2819730, *11 (S.D.N.Y. Sept. 29, 2006).

plaintiffs in this action move for certification pursuant to Rule 23(b)(3). Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

On a motion to certify a class, the court accepts all allegations in the pleadings as true. See Torres v. Gristede's Operating Corp., 04 Civ. 3316 (PAC), 2006 WL 2819730, *8 (S.D.N.Y. Sept. 29, 2006). "In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)). The Rule 23 requirements must be established by a preponderance of the evidence. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). The party seeking class certification bears the burden of satisfying the requirements of Rule 23. See Torres, 2006 WL 2819730 at *8.

A.      Rule 23(a) Requirements

1.      Numerosity

The numerosity requirement is satisfied when joinder is "impracticable." See Rule 23(a); see also Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Plaintiffs need not set forth an exact class size to establish numerosity. Robidoux, 987 F.2d at 935. The Second Circuit has found that numerosity is presumed when a class consists of forty or more plaintiffs. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The plaintiffs allege, based on reasonable inferences from available facts, including plaintiffs' first-hand recollections, that there are approximately 100 to 200 employees who fall within the proposed class definition.

15

(Pls.' Mot. for Class Certification p. 17; Declarations of Pls. & Potential Opt-in Pls., attached at Pls.' Mot. for Class Certification Exs. E-K, ¶¶ 16-17.) The alleged class is potentially numerous as to make joinder impracticable, thus the plaintiff satisfies the numerosity requirement.

>    2.    Commonality

Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001). While all issues need not be identical as to each member, the commonality prerequisite "does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." Karvaly v. eBay, Inc., 245 F.R.D. 71, 81 (E.D.N.Y. 2007) (internal quotation marks omitted). Under this court's jurisprudence, a single common question of law or fact may suffice. See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).

The Complaint, together with plaintiffs' declarations, raise a number of questions of law and fact common to all members of the class, including whether defendant has failed to compensate class members for work performed in excess of forty hours per workweek and whether defendant has a policy of misclassifying its Benefits Consultants as exempt from coverage of the overtime provisions of the NYLL. All the proposed class members would rely on the same allegedly wrongful conduct of the defendant – defendant's policy of misclassifying its Benefits Consultants as exempt– and raise the same legal arguments in support of their claim – that the outside salesperson exemption or the administrative employee exemption to the overtime requirements do not apply.

In opposing class certification, the defendant asserts that the commonality requirement is not satisfied because the job duties and responsibilities of a Benefits Consultant vary based on geographic location and type of health plan promoted such that determining

whether employees are exempt will require an individualized fact-intensive inquiry. Specifically, based on abbreviated depositions of plaintiffs and certain opt-in plaintiffs, the defendant argues that Benefits Consultants who worked in the New York City area and those who worked in the Upstate New York area performed different job duties, spent different amounts of time in defendant's offices and were subject to different levels of supervision. As discussed above, the core duty of the Benefits Consultant, as identified on the defendant's website, is to promote and market defendant's Medicare or Medicaid product in a specific geographic region. Based on this uniform job description, defendant classifies all Benefits Consultants as exempt from overtime requirements, seemingly regardless of the differences it now identifies. As such, the legality of the defendant's policy classifying all Benefits Consultants as exempt is a common question at the core of this action and links the class members together.

   3.  <u>Typicality</u>

     Rule 23(a)(3) requires that the class representatives have claims typical of those shared by the class members. "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." <u>In re Drexel</u>, 960 F.2d at 291. When the same unlawful conduct was directed at or affected both the named plaintiff and the prospective class, typicality is usually met. <u>See</u> <u>Robidoux</u>, 987 F.2d at 936-37. Typicality does not require factual identity between the named plaintiffs and the class members, only that "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." <u>Caridad</u>, 191 F.3d at 293 (internal quotation marks omitted).

Here, the named plaintiffs' claims are typical of those shared by the putative class members; the proof and legal theories offered by the plaintiffs would necessarily include the same offerings needed by the class members. Plaintiffs Aponte and Correa, similar to the proposed class members, worked as Benefits Consultants promoting defendant's health care plans and products, were subject to the same alleged misclassification as exempt employees, and were denied overtime wages for hours worked in excess of forty hours per week. In opposition, the defendant argues that the named plaintiffs' knowledge and experience is limited to the promotion and marketing of Medicare products in the New York City area and thus cannot assert claims typical of those putative class members who market and promote Medicaid products or work in the Upstate New York region. Given that the plaintiffs have established that Benefits Consultants share the core responsibility to promote and market defendant's health care services and that defendant uniformly classifies defendant as exempt from overtime regardless of geographic location or health plan promoted, the fact that the plaintiffs only promoted Medicare products in the New York City region does not render their claims atypical of those of other class members.

4.      Adequate Representation

Rule 23(a)(4) dictates that the "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). Defendant does not argue, and nothing in the record leads me to believe, that the plaintiffs' interests are antagonistic to those of any prospective class members. In fact, the interests of the plaintiffs and of the class members align closely and will require similar factual and legal proof: all of them were

18

employed by defendant as Benefits Consultants and all of them were subject to a policy classifying them as exempt. In addition, I am satisfied that the plaintiffs' attorneys are qualified, experienced, and capable of acting as lead counsel in this action.

B.   Rule 23(b)(3) Requirements

Having found that the plaintiffs satisfy Rule 23(a), I now turn to the requirements set forth by Rule 23(b)(3). The Supreme Court has held that the Rule 23(b)(3) analysis "trains on the legal or factual questions that qualify each class member's case as a genuine controversy. . . ." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).

1.   Common Questions Predominate

Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). A common question predominates when "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623.

The Court concludes that common issues predominate over individual issues. As discussed above, plaintiffs have introduced sufficient generalized proof that defendant has engaged in a common practice to deny employees overtime pay. As a court in this Circuit explained:

> [T]he class action is based on defendants' alleged policy of requiring employees to work overtime hours without adequate compensation. Thus, to prevail on the merits of this claim, plaintiffs must produce evidence that defendants implemented an

illegal policy with respect to overtime pay. Indeed, the gravamen of the claim is that defendants engaged in a course of conduct that deprived employees of their right to overtime pay. Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate.

Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 345-46 (S.D.N.Y. 2004).

### 2. Class Action is Superior to Other Methods

In addition to predominance, Rule 23(b)(3) requires the court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to determining superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). These factors are "nonexhaustive." Amchem, 521 U.S. at 615.

A class action is superior to other alternative methods of adjudicating this controversy. Many of the class members' claims will be too small to pursue individually. Given the potential class size and the likelihood that individual recovery may be relatively modest, class certification is appropriate. Litigating each claim individually would likely result in wasteful and repetitive lawsuits, thus ineffectively utilizing the resources of the judiciary and the parties. The existence of multiple lawsuits would also threaten disparity and inconsistent outcomes. Moreover, I do not foresee any atypical difficulties in the management of this class action, or discern any reason why this District is not the proper forum for this action. Finally, the class action device allows the Court to be flexible in accommodating plaintiffs' FLSA claims and

state claims.  As Judge Hellerstein wrote, in certifying a class and an FLSA collective action:

> The protections of Rule 23, although directed to class actions, can be easily adapted to the management of a collective action under section 216(b) of the FLSA. Federal Rule of Civil Procedure 16, providing for the "just, speedy, and inexpensive disposition" of all civil cases before a district court, gives me ample discretion to supervise these proceedings and to take wisdom from the entire body of Civil Procedure, including Rule 23, to accomplish those goals.

Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

    C.    Plaintiffs' Request to Appoint Class Counsel is Granted

Plaintiffs ask this court to appoint plaintiffs' counsel, Morgan & Morgan, as class counsel pursuant to Rule 23(g), Fed. R. Civ. P.  In appointing class counsel, the court must consider the following: "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

The defendants do not dispute that Morgan & Morgan is qualified and able to litigate the class members' claims.  Morgan & Morgan has diligently identified and pursued the claims in this action to date.  Moreover, the attorneys at the firm have considerable experience in employment law and class action litigation. (Frisch Aff., attached at Pls.' Mot. for Class Certification Ex. N; Leach Aff., attached at Pls.' Mot. for Class Certification, Ex. O.)  They will undoubtedly commit the necessary resources to representing the class.  Morgan & Morgan is therefore appointed class counsel.

Accordingly, the plaintiffs' class, as set forth above, is certified. The defendant is ordered to produce a complete and accurate employee list of all Benefits Consultant employees who worked for defendant in New York State during the six years preceding this action up until the date of this Order. Plaintiff is permitted to circulate a class action notice to all putative class members via First Class mail only.

CONCLUSION

For the reasons set forth above, plaintiffs' motions for conditional certification and court-authorized notice (Docket # 46) and class certification (Docket # 47) are granted. Defendant's merits-based arguments are best addressed at the summary judgment stage.


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 1, 2011