### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN DIVISION

**MIGUEL APONTE and AMADO
CORREA, on behalf of themselves and
others similarly situated,**

                                                     **CASE NO.:  1:10-CV-04825-JLC**

      **Plaintiff,**

**vs.**

**COMPREHENSIVE HEALTH
MANAGEMENT, INC., a Foreign
Profit Corporation,**

      **Defendant.**                   /

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
### <u>FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................ 1

II.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE THIRD

      OF THE SETTLEMENT FUND .................................................................................. 2

A.    The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in

      Common Fund Cases in the Second Circuit. .................................................................. 3

B.    The *Goldberger* Factors Support an Award of One-Third of the Fund. ............................ 5

1.    Class Counsel's Time and Labor .................................................................................. 5

2.    Magnitude and Complexity of the Litigation. ................................................................. 8

3.    Risk of Litigation. ........................................................................................................ 9

4.    Quality of Representation. ............................................................................................ 10

5.    Fee in Relation to the Settlement. ................................................................................. 11

6.    Public Policy Considerations. ....................................................................................... 13

III.  THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO

      CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND ................. 14

IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES

      UNDER THE SETTLEMENT AGREEMENT .......................................................... 15

V.    CONCLUSION ............................................................................................................ 16

# **TABLE OF AUTHORITIES**

Cases

*A.H. Phillips v. Walling*,
  324 U.S. 490 (1945) ................................................................. 13

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ................................................ 8

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008) ..................................................... 4

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981) .................................................................. 8

*Buccellato v. AT&T*,
  Corp., No. 10 Civ. 00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................ 1, 15

*Christopher v. SmithKline Beecham Corp.*,
  132 S. Ct. 2156 (2012) ............................................................ 10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), ................................................... 9

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................................................................. 12

*Clements v. Serco, Inc.*,
  530 F.3d 1224 (10th Cir. 2008) .............................................. 10

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................... 1, 11, 15

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................... 7, 13

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ................................................................ 14

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ....................................... 11, 14

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000) .............................................. passim

*Hicks v. Stanley,*
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..........................................14

*In re Am. Bank Note Holographics Sec. Litig., Inc.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................................4

*In re Boesky Sec. Litig.,*
  888 F. Supp. 551 (S.D.N.Y. 1995).........................................................................................14

*In re EVCI Career Colleges Holding Corp. Securities Litigation*
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................................................5

*In re Gilat Satellite Networks, Ltd.,*
  No. 02 Civ. 1510, 2007 WL 2743675 n.41 (E.D.N.Y. Sept. 18, 2007) ...................................11

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................5, 10

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  302 F. Supp. 2d 180 n.3 (S.D.N.Y. 2003)...............................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .........................................11

*In re Lloyd's Am. Trust Fund Litig.,*
  No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..........................................15

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................................15

*In re Novartis Wage & Hour Litigation,*
  611 F.3d 141 (2d Cir. 2010)...................................................................................................10

*In re Polaroid ERISA Litig.,*
  No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007).........................................3, 4

*In re Ramp Corp. Sec. Litig.,*
  No. 05 Civ. 6521, 2008 WL 58938 n.2 (S.D.N.Y. Jan. 3, 2008) .......................................3, 4, 5

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................................................................3, 13

*J.I. Case Co. v. Borak,*
  377 U.S. 426 (1964) ...............................................................................................................14

*Karpus v. Borelli*,
(In re Interpublic Sec. Litig.), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)..................................................................................................................... 4

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................... 1, 12, 14

*Maley v. Del Global Techs. Corp.*,,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................................. 1, 15

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)....................................................................................................... 3

*Mohney v. Shelly's Prime Steak*,
No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009).......................................... 12

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)........................................... 7, 14

*Perkins v. S. New England Tel. Co.*,
No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011)............................................ 10

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ................................................................................................................ 14

*Prudential Sec. Inc. Ltd. P'ships Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996)............................................................................................... 8

*Rabin v. Concord Assets Grp., Inc.*,
No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ............................................ 15

*Sand v. Greenberg*,
No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)............................................ 13, 14

*Savoie v. Merchants Bank*,
166 F.3d 456 n.4 (2d Cir. 1999)........................................................................................... 4, 14

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ..................................... 3, 12, 13

*Spicer v. Pier Sixty LLC*,
269 F.R.D. 321 (S.D.N.Y. 2010)............................................................................................. 13

*Stefaniak v. HSBC Bank USA*,
No. 05 Civ. 720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008)............................................ 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 3

*Taft v. Ackermans*,
   No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................... 10

*Varljen v. H.J. Meyers & Co.*,
   No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)................................... 5

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..................... 3, 4, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................... 3, 4

*Westerfield v. Wash. Mut. Bank*,
   Nos. 06 Civ. 2817, 08 Civ. 0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009).......................... 12

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......................... passim

Statutes
29 U.S.C. § 216(b) ..................................................................... 8

Rules
Federal Rule of Civil Procedure 23 ..................................................................... 8

Regulations
29 C.F.R. § 778.114 ..................................................................... 10

## I.   __INTRODUCTION__

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Approval of the Additional Individual Settlements Related Thereto ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel respectfully move this Court for an award of attorneys' fees in the amount of one-third of the Settlement Fund (the "Fund") and reimbursement of $60,000 in out-of-pocket expenses that were incurred in successfully prosecuting this action.

As of March 19, 2013, Class Counsel has spent more than 1823 attorney, paralegal, law clerk, and support staff hours prosecuting this case. Decl. of Andrew Frisch in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Frisch Decl.") ¶ 7. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $606,230. *Id.* ¶ 11. Class Counsel's request for one-third of the Fund – $2,166,666 – is approximately 3.57 times "lodestar." Courts routinely award counsel three times lodestar or higher in class action settlements. *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Buccellato v. AT&T Corp.*, No. 10 Civ. 00463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding fees of $3,052,500, which was a multiplier of 3.3);[2] *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002)

---

[1] For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Rachel Frisch.

[2] The lodestar amount was $922,414.50.  *See Khait v. Whirlpool Corp.* (E.D.N.Y.), ECF No. 169, Nov. 25, 2009.

(the "modest multiplier of 4.65 is fair and reasonable"). *Toure et al. v. Amerigroup, Corp., et al.*, Case 1:10-cv-05391-RLM (E.D.N.Y. 2012)(awarding multiplier of 3.53).

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result. Frisch Decl. ¶ 16. For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II.      CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE THIRD OF THE SETTLEMENT FUND

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class. The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel shall petition the Court for no more than one-third of the Settlement Payment as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment." Ex. A (Settlement Agreement) ¶ 3.2(A).[3] In addition, the Court-approved notice ("Notice") that was sent to all class members stated the following:

> Class Counsel will ask the Court to approve up to one-third of the settlement amount as their attorneys' fees. The fees will pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also ask the Court to approve the reimbursement of their out-of-pocket costs.

*See* Doc. 125-1 (Notice) p. 5. As of March 19, 2013, no class member has objected to the requested attorneys' fees or expense reimbursement. Frisch Decl. ¶ 31. As discussed below, the request for one-third of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases.

2

A.   **The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011). Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage-of-the-fund method, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), the trend in this Circuit is to use the percentage-of-the-fund method in common fund cases like this one. *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace

where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics Sec. Litig.*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) ("courts have recognized that the percentage of the recovery formula can serve as a proxy for the market in setting counsel fees"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. *Id*. at 191. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Willix*, 2011 WL 754862, at *7.

Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *See Karpus v. Borelli (In re Interpublic Sec. Litig.*), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id*. (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*,

2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## B.   The *Goldberger* Factors Support an Award of One-Third of the Fund.

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)    the time and labor expended by counsel;

(2)    the magnitude and complexities of the litigation;

(3)    the risk of litigation;

(4)    the quality of representation;

(5)    the requested fee in relation to the settlement; and

(6)    public policy considerations.

209 F.3d at 50 (internal quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.   Class Counsel's Time and Labor

Class Counsel expended significant effort to achieve the $6,500,000 settlement. The parties engaged in significant discovery before agreeing to resolve this case.  Defendant deposed the

named Plaintiffs and 15 opt-in Plaintiffs. Frisch Decl. ¶ 22. Plaintiffs deposed five (5) of Defendant's Rule 30(b)(6) witnesses who testified about the job duties of Benefits Consultants, the requirements for the Benefits Consultant position, Defendant's payroll policies and practices, the training Benefit Consultants receive from Wellcare, and Defendant's decision to classify Benefit Consultants as exempt. *Id*. ¶ 23. Plaintiffs also responded to interrogatories and document requests for the two Plaintiffs and three hundred eighty-five (385) opt-in Plaintiffs and Rule 23 class members. *Id* ¶ 24. Defendant produced tens of thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, production reports, emails, and memoranda. Frisch Decl. at ¶ 22.  In addition, Plaintiffs interviewed approximately one hundred (100) opt-in Plaintiffs regarding their duties and hours worked. *Id* ¶ 24.

The parties' settlement negotiations were extensive. The Parties attended two separate full-day mediations prior to resolving the case.  The first mediation took place on October 6, 2011, in New York, New York and was presided over by experienced mediator, Ruth Raisfeld. The initial mediation ended in an impasse and the Parties subsequently continued to litigate the case for approximately ten (10) months thereafter. *Id. ¶* 25.

On July 20, 2012, the parties attended a second full-day mediation session in Tampa, Florida, this time with experienced employment law mediator, Hunter Hughes, of Rogers & Hardin, LLP, in Atlanta, Georgia. *Id*. ¶ 26. The Parties reached a settlement at the conclusion of this second full-day mediation. The parties then drafted a detailed settlement agreement, which incorporated all terms and which all parties have signed. *Id*.; *See also* Ex. A (Settlement Agreement).

On September 21, 2012, Plaintiffs filed their Motion for Preliminary Approval. Frisch Decl. ¶ 34. On October 2, 2012, the Court requested supplemental information, which Plaintiffs provided. On April 20, the Court granted Plaintiffs' motion for Preliminary Approval. *Id.* ¶ 35.

In performing this work, Class Counsel spent approximately 1823 hours of attorney, paralegal, law clerk and staff member time, for an aggregate lodestar of approximately $606,230. *Id.* ¶¶ 7, 11. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. *Id.* ¶ 10. Class Counsel made every effort to coordinate work to avoid duplication of efforts. *Id.* ¶ 8.

Moreover, the requested fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *Id.* ¶ 14. *See deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Frisch Decl. ¶ 14. For example, since the Notices were sent out, Class Counsel and staff have responded to inquiries from class members requesting information regarding the terms of the settlement and the amount of their settlement award. *Id.* Class Counsel expects

to respond to more class member inquiries after final approval, especially after checks are issued. *Id.*

### 2.    Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

In this case, there were several disputed questions of law and fact, including the interpretation of the administrative and outside sales exemptions and their application to Benefit Consultants, the duties performed by Benefit Consultants, including whether they made "sales" within the meaning of the FLSA, and whether the locations where they performed their duties constituted "places of business" under the outside sales exemption. Given the size of the class (approximately 1600 class members) and the mixed questions of law and fact at issue, this factor

supports approving Class Counsel's attorneys' fee request. *See Willix*, 2011 WL 754862, at *7 (approving fee request of 33 1/3% in case involving allegedly misclassified marketing representatives).

### 3        Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger,* 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Frisch Decl. ¶¶ 15, 16. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* ¶ 15. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a remarkable investment of time, energy, and resources. *Id.* Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* Moreover, the circumstances of this case presented hurdles to a successful recovery because of the fact-intensive nature of proving liability and the defenses available to Defendants.

As discussed above, a central legal question in this case was the interpretation of the FLSA's outside sales exemption – a complete defense to an overtime claim. Although there have been several misclassification cases brought by marketing representatives, no court has

determined whether they are in fact misclassified as outside salespeople. Moreover, while Plaintiffs believe they could distinguish the Supreme Court's recent decision in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), which abrogated the Second Circuit's decision in *In re Novartis Wage & Hour Litigation*, 611 F.3d 141 (2d Cir. 2010), and held that the outside sales exemption applied to pharmaceutical sales representatives who were prohibited by law from selling pharmaceuticals, there is no doubt that the case changed the legal landscape in the Second Circuit and increased the risks that Plaintiffs faced.

In addition, even if Defendant failed to prove that Plaintiffs were exempt, it would have argued that damages should be calculated using the "fluctuating work week" method, which assumes that employees' salaries already compensate them for all hours worked and that therefore they are only entitled to the extra half-time in unpaid overtime. *See* 29 C.F.R. § 778.114. The applicability of this method of calculating damages in misclassification cases is hotly contested. *Compare Perkins v. S. New England Tel. Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *3 (D. Conn. Sept. 27, 2011), *with Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008).

Despite these risks, Class Counsel secured a substantial settlement. Accordingly, this factor weighs in favor of Class Counsel's request for attorneys' fees.

### 4        Quality of Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

Here, the recovery is substantial and will be allocated to approximately 1600 class and

collective members. The settlement will be available to class members without the uncertainty and delay of further litigation. Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *See* Frisch Decl. ¶ 6; *Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported fee award); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund). In particular, Class Counsel's experience litigating wage and hour cases on behalf of employees like the benefits consultants here, against one of Defendant's competitors, was an important factor in the success they achieved because it informed important strategic decisions and enhanced their evaluation of the strengths and weaknesses of the case. Frisch Decl. ¶ 6.

### 5.    Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven the modest size of the [$20 million] settlement").

The size of the $6,500,000 settlement weighs in favor of granting the requested fee award

of one-third of the common fund. *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one-third of a $42 million settlement in a FLSA and NYLL misclassification case); *Willix*, 2011 WL 754862, at *6-7 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Sewell*, 2012 WL 1320124, at *13 (awarding one-third of $2,530,000 in wage and hour misclassification case); *Toure et al. v. Amerigroup, Corp, et al.*, Case 1:10-cv-05391-RLM, Docs. 105 (awarding class counsel one-third of $4,450,000 settlement fund in FLSA and NYLL wage and hour action involving marketing representatives);  Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait*, 2010 WL 2025106, at *8-9 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit); *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA*, No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement). A fee of one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (internal quotation marks omitted).

**6.**       **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and New York Labor Law are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 328 (S.D.N.Y. 2010) (liberally construing the NYLL because of its "remedial nature") (internal quotation marks omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Sewell*, 2012 WL 1320124, at *13 (internal quotation marks omitted); *deMunecas*, 2010 WL 3322580, at *8; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.") Adequate compensation for attorneys who protect those rights by

taking on such litigation furthers the remedial purpose of those statutes. *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8.

Courts have recognized that fee awards in cases like this encourage "private attorneys general" to seek redress for violations. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *see also Khait*, 2010 WL 2025106, at *8 ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL.") Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *Sand*, 2010 WL 69359, at *3.

## III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005). Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.

*In re Boesky Sec. Litig.*, 888 F. Supp. 551, 561-62 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

Courts regularly award lodestar multipliers between two to six times lodestar. *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3); *Buccellato*, 2011 WL 3348055, at *2 (awarding multiplier of 4.3); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Grp., Inc.,* No. 89 Civ. 6130, 1991 WL 275757, at *1-2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4). In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Class Counsel spent approximately 1823 hours litigating and settling this matter. Frisch Decl. ¶ 7. The time spent by Class Counsel is described in the Frisch Decl. and Class Counsel's contemporaneous time records attached thereto. *See* Ex. A (Time Summary) & Exs. B, C (Time Records). The hours worked by Class Counsel result in a lodestar of approximately $606,230. Frisch Decl. ¶ 11. Class Counsel's request for 3.57 times their lodestar is within the range of multipliers regularly awarded by courts in this Circuit.

## IV.     CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Class Counsel requests reimbursement of sixty thousand and 0/100 dollars ($60,000.00) in out-of-pocket expenses to be paid from the Fund, which is less than the actual amount of

expenses Class Counsel incurred in prosecuting this case. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, Class Counsel's unreimbursed expenses were incidental and necessary to the representation of the Class. Frisch Decl. ¶ 12 & Exs. C & D. They include costs for court filing fees, court reporter services and deposition transcription fees, telephone charges, postage, transportation, photocopies, electronic research, one-half of the mediator's fees, and other similar expenses. *Id*.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $2,166,667, which is one-third of the Fund; and (ii) reimbursing $60,000 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated this <u>19th</u> day of March, 2013.

Respectfully submitted,

**/s/ CARLOS V. LEACH**
Carlos V. Leach, Esquire
FBN 0540021
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 425-8171
Email: CLeach@forthepeople.com
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the above and foregoing of Plaintiff, Plaintiff, has been served to: Peter C. Moskowitz, Esquire, Jason A. Zoldessy, Esquire, and Ariana Wright Arnold, Esquire, Jackson Lewis, Jackson Lewis LLP, 666 Third Avenue, New York, NY 10017-4030, 2800 Quarry Lake Drive, Suite 200, Baltimore, MD 21209; Emails: MoskowitzP@JacksonLewis.com, ZoldessJ@JacksonLewis.com and ariana.arnold@JacksonLewis.com, using the CM/ECF filing system, which I understand will send a notice of electronic filing this 19th day of March 2013.

**/s/ CARLOS V. LEACH**
Carlos V. Leach