USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/2/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MIGUEL APONTE and AMADO CORREA,
on behalf of themselves and
others similarly situated,

                Plaintiffs,      :      10 Civ. 4825 (JLC)

            -v.-

COMPREHENSIVE HEALTH MANAGEMENT,
INC., a Foreign Profit Corporation,

                Defendant.
------------------------------------------------------------X

<u>FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTIONS FOR
CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, APPROVAL OF FLSA SETTLEMENT, APPROVAL OF THE
ADDITIONAL INDIVIDUAL SETTLEMENTS, APPROVAL OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS</u>

Plaintiffs and the class members comprise a class of approximately 1600 current and former Medicare and Medicaid Benefits Consultants ("Benefits Consultants") and are members of both a Rule 23 class who work or worked for Defendant, Comprehensive Health Management, Inc. ("Wellcare" or "Defendant") in New York, and a national class conditionally certified under the Fair Labor Standards Act ("FLSA"), of Benefits Consultants, who work or worked for Defendant in various states throughout the United States. Plaintiffs' job duties involved obtaining signed applications for benefits from eligible Medicare and/or Medicaid beneficiaries for free or low cost government-subsidized health insurance at locations throughout all markets in which Wellcare does business. In order to sign up such eligible beneficiaries, Plaintiffs worked at various locations including doctors' offices, community events, and pharmacies.

USDC SDNY
DATE SCANNED 4/2/13

On June 21, 2010, Plaintiffs Miguel Aponte and Amado Correa filed a class and collective lawsuit on behalf of Wellcare Benefit Consultants who worked for Defendant nationwide. Plaintiffs alleged that Wellcare violated the FLSA and New York Labor Law ("NYLL") by misclassifying them as exempt "outside salespeople" and failing to pay them overtime when they worked more than 40 hours in a workweek. *See* Dkt. No. 1, ¶¶ 25-26.

On January 14, 2011, Plaintiffs filed Motions for Conditional Certification and Court-approved Notice and Class Certification. Both Motions were contested by Defendant. On June 2, 2011, the Court entered a Memorandum and Order granting Plaintiffs' Motions for Conditional Certification and Court-approved Notice and Class Certification. Dkt. No. 87. Following the initial notice or opt-in period, a total of 346 current and former Benefits Consultants opted in to the FLSA case.

After engaging in discovery, the parties reached a settlement totaling six million, five hundred thousand and 0/100 dollars ($6,500,000.00). On October 2, 2012, the Court preliminarily approved the settlement, conditionally certified the settlement class, appointed Morgan & Morgan, P.A. as Class Counsel, and authorized notice of the settlement to be mailed to class members. Dkt. No. 126. No class members have objected to the settlement or requested exclusion from it.

On March 19, 2013, Plaintiffs filed a Motion for Certification of Settlement Class, Final Approval of Class Action Settlement, Approval of FLSA Settlement, and Approval of Individual Settlement ("Motion for Final Approval") (Dkt. No. 128). The same day, Plaintiffs also filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") (Dkt. No. 133) and a Motion for Service Awards ("Motion for Service Awards") (Dkt. No. 131).

The Court held a fairness hearing on April 2, 2013 and granted certification and approval of the settlement class. Prior to the fairness hearing, Wellcare agreed to resolve the claims of approximately ninety (90) individual Benefits Consultants ("Additional Claimants") who would otherwise meet the respective class definitions, but who for one reason or another failed to timely file their "Consent to Join" the FLSA case, or in two instances who actually elected to opt-out of the Rule 23 class, prior to the time of the class settlement. Such claims will be resolved out of monies that otherwise would have reverted to Wellcare pursuant to the Settlement Agreement, and will not diminish the class proceeds, or the recovery of any class member in any way. As part of their Motion, Plaintiffs request that the Court approve the individual settlement agreements of these Additional Claimants.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Award, the supporting declarations, the arguments presented at the April 2, 2013 fairness hearing, and the complete record in this matter, and for good cause shown, and the Court having consent jurisdiction over this matter pursuant to 28 U.S.C. § 636(c),

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:**

**Certification of the Settlement Class**

1. The Court finds that all of the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure are satisfied for settlement purposes, and notes that the Court previously certified the case as a class action. *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2011 WL 2207586, at *8-11 (S.D.N.Y. June 2, 2011).

2. The Court certifies the following class under Fed. R. Civ. P. 23(e), for settlement purposes only ("Settlement Class"):

> All individuals who work or worked for Defendant in the Benefits
> Consultant positions or in another similar job title whose primary
> job function was enrollment of members in Medicare and/or
> Medicaid health plans in New York between June 21, 2004 and
> October 2, 2012.

**Approval of the Settlement Agreement**

3. The Court grants the Motion for Final Approval and approves the settlement on behalf of the class as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23(e). Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *DAmato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, courts determine whether the settlements terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement[]" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *3 (S.D.N.Y. Feb. 24, 2012); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").

4. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption

4

of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *See, e.g., Torres v. Gristedes Operating Corp.*, Nos. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010).

***Procedural Fairness***

5.  The Court finds that the settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). Here, the settlement was reached after Class Counsel had conducted a thorough investigation of the facts and engaged in significant discovery, and after extensive negotiations between the parties. Class Counsel interviewed approximately 100 Benefit Consultants regarding their duties and hours worked, and deposed five (5) Rule 30(b)(6) witnesses, who testified about the job duties of Benefit Consultants, Defendants' compensation policies and practices, and Defendants' decision to classify Benefit Consultants as exempt. Defendant also produced documents and deposed the two named Plaintiffs and fifteen (15) opt-in Plaintiffs. From these sources, Class Counsel was able to evaluate the strengths and weaknesses of the claims.

6.  To help resolve the case, the parties enlisted the services of two experienced employment mediators, Ruth Raisfeld and Hunter Hughes. Two separate full-day mediations were

held. Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *6 (S.D.N.Y. Apr. 16, 2012).

### *Substantive Fairness*

7. The settlement is substantively fair. All of the factors set forth in *Grinnell*, 495 F.2d at 463, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

8. The *"Grinnell* factors" are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The Court has evaluated the *Grinnell* factors, and determined that they support approval of the settlement, as set forth in paragraphs 9-15 below.

9. Litigation through trial would be complex, expensive, and long.

10. The class reaction to the settlement has been positive. No class member objected or excluded himself from the settlement. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F.

Supp. 2d 337, 345 (S.D.N.Y. 2008); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011).

11. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (internal quotation marks omitted).

12. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses presents risk. The settlement eliminates this uncertainty.

13. The risk of maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify the class would require extensive briefing, possibly followed by an appeal. Settlement eliminates the risk, expense, and delay inherent in this process.

14. The settlement eliminates any risk of collection.

15. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (internal quotation marks omitted).

**Approval of FLSA Settlement**

16. The Court approves the FLSA settlement.

17. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *Sewell*, 2012 WL 1320124, at *10; *Torres*, 2010 WL 5507892, at *6.

18. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Clark*, 2010 WL 1948198, at *7. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6 (internal quotation marks omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Clark*, 2010 WL 1948198, at *7.

19. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation.

**Approval of Individual Settlements**

20. Following the Court's preliminary approval of the settlement (the "Preliminary Approval Order") and the initial notice mailing, approximately one hundred two (102) individuals either contacted Simpluris, Inc. ("Simpluris"), the settlement claims administrator, or Class Counsel to request inclusion in the Settlement ("Additional Claimants"). These individuals made a variety of different claims, including claims that they had never received the prior notices, that they inadvertently failed to opt-in, or that they unintentionally opted-out (or that someone else sent in their opt-out form). They further requested that they be permitted to participate in the settlement under the terms similar to

8

those negotiated by the existing class members.

21. Class counsel subsequently collected information from such Additional Claimants pertinent to their individual claims, and forwarded same to Defense Counsel, so that Defense Counsel could research their dates of employment in a qualifying position during the covered period. Although it was ultimately agreed between counsel for the Parties that the Additional Claimants could not be included in the initial settlement, because such inclusion would unfairly diminish the monies already allocated to the eligible class members, the Parties agreed to resolve the claims of eligible Additional Claimants separately, but using the same allocation as that used in the Settlement Agreement. Further, it was agreed that monies used to fund those claims from Additional Claimants would come from monies that otherwise would have reverted to Defendant under the terms of the Settlement, such that the resolution of the Additional Claimants' claims will in no way diminish the recovery of eligible class members.

22. A total of approximately 102 Additional Claimants have submitted their claims to Simpluris to date. Defendant has agreed to settlement of approximately 90 of these claims. The terms of the Additional Claimants' settlements mirror those of the settlement class and, for the same reasons outlined above, the individual settlements of the Additional Claimants' claims are fair and reasonable.

**Dissemination of Notice**

23. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out

of the class, to object to the settlement, and to appear at the fairness hearing conducted on April 2, 2013. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## Award of Fees and Costs to Class Counsel and Award of Service Awards to Class Representatives and Certain Opt-in Plaintiffs

24. On June 2, 2011, the Court appointed Morgan & Morgan, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). Dkt. No. 87.

25. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

26. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law. Dkt. No. 87; *see also Toure et al. v. Amerigroup, Corp, et al.*, No.10 Civ. 5391 (RLM), 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (finding that Morgan & Morgan are qualified, experienced, and capable of acting as lead counsel in wage and hour class actions).

27. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. To this end, Class Counsel has committed substantial resources to prosecuting this case.

28. Accordingly, the Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $2,166,667.00 in attorneys' fees, or one-third of the fund (including any interest in the fund).

29. The Court finds that the amount of fees requested is fair and reasonable using the

"percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Sewell*, 2012 WL 1320124, at *10; *Ramirez*, 2012 WL 651640, at *4.

30. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank*, 228 F.R.D. at 189. Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL.

31. Class Counsel's request for one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011); *Willix*, 2011 WL 754862, at *6; *Clark*, 2010 WL 1948198, at *8-9; *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010).

32. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens*

*Neighborhood Association v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), which held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Willix*, 2011 WL 754862, at *7; *Clark*, 2010 WL 1948198, at *9.

33. All of the factors in *Goldberger*, 209 F.3d at 50, weigh in favor of a fee award of one-third of the fund.

34. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *Clark*, 2010 WL 1948198, at *9.

35. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $60,000.00, which the Court deems to be reasonable. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).

36. The awarded attorneys' fees and reimbursed costs shall be paid from the settlement fund.

37. The Court finds the service awards of $10,000.00 each to named Plaintiffs Miguel Aponte and Amado Correa, and of $500.00 each to opt-in Plaintiffs Delfina Rincon, Francisca Alcantara, Lisa Doherty, Michael Wills, Robert Bennett, Mary Giles, Patrick Brown, Dianne Rinne, Richard Thoben, Henry Lam, Laurie Luedee, Jose Rivera,

Christopher Boring, and Romina Alesci, to be reasonable as well. These amounts shall be paid from the settlement fund.

38. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g., Ramirez,* 2012 WL 651640, at *4; *Sewell,* 2012 WL 1320124, at *14-15; *Reyes,* 2011 WL 4599822, at *9; *Willix,* 2011 WL 754862, at *7.

39. Here, the service awards recognize the risks that the named Plaintiffs and opt-ins faced by participating in a lawsuit against their current or former employer and the efforts they made on behalf of the class, including producing documents, responding to interrogatories, and preparing for and having their depositions taken. *See, e.g., Parker v. Jekyll & Hyde Entmt Holdings, LLC,* No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

**Conclusion and Dismissal**

40. The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

41. Upon the Effective Date of the settlement, this litigation shall be dismissed with prejudice.

42. Within 14 days of the Effective Date, the settlement claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

    a.    Paying Class Counsel's attorneys' fees of $2,166,667.00 and costs of $60,000.00;

    b.    Paying service awards of $10,000.00 each to named Plaintiffs Miguel Aponte and Amado Correa, and of $500.00 each to opt-in Plaintiffs Delfina Rincon, Francisca Alcantara, Lisa Doherty, Michael Wills, Robert Bennett, Mary Giles, Patrick Brown, Dianne Rinne, Richard Thoben, Henry Lam, Laurie Luedee, Jose Rivera, Christopher Boring, and Romina Alesci; and

    c.    Paying additional amounts of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

43. For the same reasons discussed above, the Court also approves the individual settlements of the Additional Claimants, as fair and reasonable resolutions of bona fide disputes.

44. Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Final Order.

45. This Final Order and Judgment resolves docket numbers 128, 131, and 133, and the Clerk is directed to mark these motions as closed.

**SO ORDERED.**

Dated: New York, New York
April 2, 2013

_____
JAMES L. COTT
United States Magistrate Judge